UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROCKLAND EXPOSITION, INC.,

                              Plaintiff,                    Case No. 09-CV-5148 (KMK)

     -v-                                                   <u>OPINION AND ORDER</u>

GREAT AMERICAN ASSURANCE CO.,

                              Defendant.

<u>Appearances:</u>

Jerold Oshinsky, Esq.
Jenner & Block, LLP
Los Angeles, CA
*Counsel for Plaintiff*

Jeff Imeri, Esq.
Marshall, Dennehey, Coleman & Goggin, PC
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

        Plaintiff Rockland Exposition, Inc. ("Plaintiff," or "REI") brings this suit against its

insurer Great American Assurance Company ("Defendant," or "Great American."). REI has

been sued by the Association of Automobile Service Providers of New Jersey ("AASP") in a

dispute over competing trade shows. In the present suit, REI seeks a declaratory judgment that

Great American must pay for REI's legal fees and costs in its litigation with AASP. Both parties

have moved for summary judgment. Because REI did not notify Great American of the AASP

suit in a timely fashion, the Court grants Great American's motion, and denies REI's motion.

I. Background

A. Facts

The essential facts of this case are not in dispute.  Great American insured REI under a primary commercial general liability policy (No. GLP5688384-03) (the "Policy"), effective August 31, 2007 to August 31, 2008.  (Def.'s Statement of Material Facts in Supp. of Def.'s Cross-Mot. for Summ. J. ("Def.'s 56.1") ¶ 7).[1]  The Policy obligated Great American "to defend [REI] against any 'suit' seeking . . . damages" covered by the Policy.  (Aff. of Lynn Damewood ("Damewood Aff.") Ex. A, Commercial Gen. Liab. Coverage Form ("Commercial Gen. Liab. Form") § I, Coverage B, 1.a.)  However, the Policy required that REI "must see to it that" Great American is "notified as soon as practicable of an 'occurrence' or an offense which may result in a claim."  (*Id.* § IV, 2.a.)  The Policy further required that "[i]f a claim is made or 'suit' is brought against [REI], [REI] must . . . see to it that [Great American] receive[s] written notice of the claim or 'suit' as soon as practicable."  (*Id.* § IV, 2.b.)  REI had to "[i]mmediately send" Great American "copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit.'"  (*Id.* § IV, 2.c.(1).)

---

[1] David McCarey, the President of REI, has stated that REI purchased the Policy from "our insurance intermediary Gregory Townsend," who was at that time, and still is, "employed by the insurance intermediary Marshall & Sterling." (Pl.'s Mem. of P. & A. in Opp. to Def.'s Cross-Mot. for Summ. J. ("Pl.'s Resp.") Ex. A-6, Affirmation of David McCarey ("McCarey Affirmation") ¶ 2.)  While Mr. McCarey claims that he viewed Gregory Townsend as an insurance agent, and not an insurance broker (*id.* ¶ 10), he also acknowledges that he has known Gregory Townsend "for many years," that he first purchased insurance from Townsend's father when he (McCarey) was sixteen years old, and that REI had purchased insurance through the Townsend family since 1983, (*id.* ¶ 3).  Also, the Complaint refers to Marshall & Sterling as "an insurance broker." (Compl. ¶ 9.)

On June 26, 2008, AASP sued REI in the United States District Court for the District of New Jersey.  (Def.'s 56.1 ¶ 4.)[2]  AASP faxed REI a copy of its complaint on June 27, 2008 (*id.* ¶ 12), and formally served REI on July 11, 2008 (*id.* ¶ 14).  REI should not have been surprised by this lawsuit because it received a letter from AASP's counsel dated March 27, 2008, which instructed REI not to "interfere" with AASP's trade show or to "mislead[] and confuse[] potential participants" of the AASP trade show "by creating a similar and therefore competing trade show, and using a name that is similar."  (Decl. of Jeffrey J. Imeri Ex. C, Letter from Laurence H. Olive, Counsel for AASP, to David McCarey, III, President of REI, March 27, 2008.)  The letter concluded by threatening that "[s]hould there be any form of misconduct on your behalf, you and your company will be subject to a lawsuit including, but not limited to tortious interference with contractual rights, interference with business relations, trade name infringement, defamation, among other claims."  (*Id.*)

REI contends that on August 19, 2008, it notified Great American of AASP's claim "by oral notification to its insurance intermediary, Marshall & Sterling."  (Pl.'s Resp. 3.)  This notice occurred when Gregory Townsend (from Marshall & Sterling) happened to visit REI to provide REI renewal documents related to the Policy.  (Pl.'s Mem. Ex. A-4 ¶ 5.)  Mr. McCarey asserts that during that visit he and Mr. Townsend "discussed whether coverage would exist" for the AASP litigation (Pl.'s Mem. Ex. A-4 ¶ 5), and that McCarey asked Townsend "to determine

---

[2] AASP asserted several claims against REI, including False Designation of Origin, Dilution, Common Law Unfair Competition, New Jersey Statutory Unfair Competition, New Jersey Trademark Violation, Tortious Interference, and Misappropriation of Confidential Business Information.  (Pl.'s Mem. of P. & A. in Supp. of its Mot. for Partial Summ. J. ("Pl.'s Mem.") Ex. A-2, ¶¶ 33-58.)  On August 8, 2008, REI filed a counter-suit against AASP in this Court.  (*REI v. AASP et al.*, 08-CV-7069, Dkt. No. 1.)  On December 22, 2008, the New Jersey court transferred AASP's suit against REI to this Court, where it was consolidated with REI's counter-suit against AASP.  (*AASP v. REI & McCarey*, 08-CV-11107, Dkt. Nos. 1, 2.)

whether REI's insurance policies provided coverage for the AASP action," (*id.* ¶ 7).  McCarey

does not allege that REI gave Marshall & Sterling anything in writing until September 30, 2008,

when it provided Marshall & Sterling a copy of AASP's complaint.  (*Id.*)  Great American

received the complaint from Marshall & Sterling the next day, October 1, 2008.  (Def.'s 56.1 ¶

15.)  Great American claims that this was the first it heard about REI's litigation with AASP, and

REI does not dispute this.  (*Id.*)  By letter dated October 29, 2008, Great American advised REI

that it would not pay REI's legal fees for the AASP litigation because (1) REI did not comply

with the Policy's notice provisions, (2) AASP's claims against REI were not covered by the

Policy, and (3) even if AASP's claims did fall under the Policy's general language, coverage for

them was precluded by a number of the Policy's specific exclusions.  (*Id.* ¶ 17.)[3]  This litigation

followed.

B.  Procedural History

REI filed this suit on June 3, 2009.  (Dkt. No. 1.)  Great American answered on July 15,

2009.  (Dkt. No. 7.)  Both parties moved for summary judgment on November 23, 2009.  (Dkt.

Nos. 38-45.)  The Court held oral argument on April 13, 2010.  (Dkt. No. 46.)  On May 3, 2010,

the Court granted Plaintiff's request to file supplemental affidavits, and gave both parties the

---

[3] Great American argues that the Policy does not cover the AASP suit because, inter alia, the Policy only covers "[i]nfringing upon another's . . . trade dress or slogan" (Commercial Gen. Liab. Form § V, 14.g), whereas AASP's complaint explicitly alleged "trademark" infringement and never mentioned the terms "trade dress" or "slogan."  (Def.'s Mem. of Law in Opp. to Pl.'s Mot. for Partial Summ. J. ("Def.'s Resp.") 22-25; Def.'s Reply 8-10.)  REI counters that an insurer has a duty to defend whenever the facts alleged in the complaint at least arguably bring the suit within a covered cause of action, even if that cause of action is not explicitly alleged. REI further contends that AASP's allegations could be construed as trade dress and slogan claims and, therefore, the Policy covers AASP's suit.  (Pl.'s Mem. 10-13.)  Because the Court finds that REI's claim fails due to its untimely notice, it need not decide whether the AASP suit would otherwise have been covered by the Policy.

opportunity to file supplemental briefs.  (Dkt. No. 48.)  Both parties did so within the allotted

time.  (Dkt. Nos. 49, 50.)

## II.  Discussion

### A.  Standard of Review

Summary judgment should be granted where it is shown that there is "no genuine issue as

to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  "When ruling on a

summary judgment motion, the district court must construe the facts in the light most favorable

to the non-moving party and must resolve all ambiguities and draw all reasonable inferences

against the movant."  *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003);

*see also Tufariello v. Long Island R.R. Co.*, 458 F.3d 80, 85 (2d Cir. 2006) (noting that a court

must draw all reasonable inferences in the nonmovant's favor).

A party seeking summary judgment bears the burden of establishing that no genuine

issue of material fact exists.  *See Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d

Cir. 2005).  "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is

sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential

element of the nonmovant's claim.  In that event, the nonmoving party must come forward with

admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary

judgment."  *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (internal citations

omitted).  "When the moving party has carried its burden under Rule 56(c), its opponent must do

more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (footnote omitted);

*see also McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006)

("[S]peculation alone is insufficient to defeat a motion for summary judgment."). A fact is material when "it might affect the outcome of the suit under governing law." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted). At summary judgment, a court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial. *See Westinghouse Elec. Corp. v. N.Y. City Transit Auth.*, 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990). A court's goal should be to "isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323-24.

B. Analysis

As noted, the Policy required REI to notify Great American in writing "as soon as practicable" if a suit is brought against REI. (Commercial Gen. Liab. Form § IV, 2.b.) This is standard language "in liability policies that has been interpreted to require notice within a reasonable time under the circumstances." *Travelers Ins. Co. v. Volmar Const. Co.*, 752 N.Y.S.2d 286, 288 (App. Div. 2002); *see also Olin Corp. v. Ins. Co. of N. Am.*, 966 F.2d 718, 723 (2d Cir. 1992) (same). Under New York Law, "compliance with notice provisions in an insurance contract is a condition precedent to recovery," *U.S. Underwriters Ins. Co. v. Vittorioso*, No. 97-CV-0075, 1999 WL 167716, at *2 (E.D.N.Y. Jan. 6, 1999), and "failure by the insured to comply with such requirements relieves the insurer of liability," *Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co.*, 748 F.2d 118, 121 (2d Cir.1984).[4] "Absent a valid excuse, a

---

[4] In a diversity case, a federal court must apply the choice of law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). "New York has accepted a grouping of contacts approach in actions involving contracts, giving to the place having the most interest in the problems paramount control over the legal issues arising out of the contracts." *Munzer v. St. Paul Fire & Marine Ins. Co.*, 610 N.Y.S.2d 389, 390 (App. Div. 1994). This case is a dispute over a New York contract. REI, a New York corporation (Compl. ¶ 4), purchased the Policy through a New York broker, Marshall & Sterling, (*id.* ¶ 9). Marshall & Sterling then delivered the Policy from its office in Poughkeepsie, NY, to REI's office in

failure to satisfy the notice requirement vitiates the policy." *Sec. Mut. Ins. Co. v. Acker-Fitzsimons Corp.*, 293 N.E.2d 76, 78 (N.Y. 1972).[5] Thus, "an insured's failure to provide timely notice of a claim to its . . . insurer is a complete defense to coverage, regardless of whether the carrier was prejudiced by the late notice." *Green Door Realty Corp. v. TIG Ins. Co.*, 329 F.3d 282, 287 (2d Cir. 2003); *see also Am. Home Assurance Co. v. Int'l Ins. Co.*, 684 N.E.2d 14, 16-17 (N.Y. 1997) ("[I]t is settled law in New York that '[a]bsent a valid excuse, a failure to satisfy the notice requirement vitiates the policy and the insurer need not show prejudice before it can assert the defense of noncompliance.'" (quoting *Sec. Mut. Ins. Co.*, 293 N.E.2d at 78)).[6]

"New York courts have held that the question whether notice was given within a reasonable time may be determined as a question of law when (1) the facts bearing on the delay in providing notice are not in dispute and (2) the insured has not offered a valid excuse for the

---

Middletown, NY.  (*Id.*)  Moreover, the Parties agree that New York law should apply. Accordingly, this Court applies New York law.

[5] Prompt notice serves the useful purpose of allowing "the insurer to investigate the facts on which the claim is predicated and to adjust its books in order to maintain a proper reserve fund in light of the insured's claim." *Utica Mut. Ins. Co.*, 748 F.2d at 121.

[6] On July 17, 2008, New York amended its insurance law to require that every policy issued or delivered in the state, "against liability for injury to person . . . or against liability for injury to, or destruction of, property," contain a "provision that failure to give any notice required to be given by such policy within the time prescribed therein shall not invalidate any claim made by the insured, injured person or any other claimant, unless the failure to provide timely notice has prejudiced the insurer."  N.Y. Ins. Law § 3420(a)(5).  But, this law only applies to policies issued on or after January 17, 2009.  *See* An Act to Amend the Civil Practice Law and Rules and the Insurance Law, in Relation to Liability Insurance Policies § 8, 2008 N.Y. Sess. Laws 388 (McKinney) ("This act shall take effect on the one hundred eightieth day after it shall have become a law, and shall apply to policies issued or delivered in this state on or after such date and to any action maintained under such a policy . . . .").  Here, it is undisputed that the Policy was issued before January 17, 2009.  (Def.'s 56.1 ¶ 6.)  Thus, N.Y. Ins. Law § 3420(a)(5) does not apply to the Policy, and Great American need not show that it was prejudiced by any late notice by REI.

7

delay." *New York v. Blank*, 27 F.3d 783, 795 (2d Cir. 1994); *see also Gresham v. Am. Gen. Life Ins. Co.*, 523 N.Y.S.2d 282, 282 (App. Div. 1987) ("While ordinarily it is a question of fact whether an insured gave timely notice of loss, summary judgment is warranted where the insured has not offered a credible excuse for the delay in notification and where the underlying facts are not in dispute . . . ."); *Columbus Trust Co. v. Hanover Ins. Co.*, 375 N.Y.S.2d 628, 629 (App. Div. 1975) (collecting cases).

### 1.  Whether REI's Notice was Unreasonably Late

The Court must first ask whether REI's delay was unreasonable as a matter of law.  It is undisputed that on June 27, 2008, AASP informed REI of the suit and faxed REI a copy of the complaint (Def.'s 56.1 ¶ 12), and it was not until October 1, 2008 that Great American received actual notice of AASP's suit, (*id.*  ¶ 15).  But, the Parties do dispute whether REI's August 19, 2008 notice to Marshall & Sterling constitutes notice to Great American.

Under New York law, "an insurance broker is the agent of the *insured*, not the insurance company, and notice to an insurance broker, absent exceptional circumstances, is not notice to the insurer."  *Phila. Indem. Ins. Co. v. Horowitz, Greener & Stengel, LLP*, 379 F. Supp. 2d 442, 457 (S.D.N.Y. 2005) (internal quotation marks and ellipsis omitted); *see also Vittorioso*, 1999 WL 167716, at *2 ("Under New York law an insurance broker is ordinarily an agent of the insured, not the insurer."); *Sec. Mut. Ins. Co.*, 293 N.E.2d at 79 n.3 ("[A] broker is normally the agent of the insured and notice to the ordinary insurance broker is not notice to the liability carrier.").  "Such exceptional circumstances have been found in situations where the agent's role went far beyond that of solicitor of the liability policy, and included responsibilities such as collecting premiums, issuing the policy, and being designated as an agent or broker for the insurer."  *Phila. Indem. Ins. Co.*, 379 F. Supp. 2d at 457 (internal quotation marks omitted); *see*

*also Cohen v. Utica First Ins. Co.*, 436 F. Supp. 2d 517, 527 (E.D.N.Y. 2006) (noting that "exceptional circumstances" justifying a court in finding that notice to an insurance broker constitutes notice to the insurer, "have been found in situations where the agent's role 'went far beyond that of solicitor of the liability policy, and included responsibilities such as collecting premiums, issuing the policy, and being designated as an "agent or broker" for the insurer.'" (quoting *Phila. Indem. Ins. Co.*, 379 F. Supp. 2d at 457)); *Mighty Midgets, Inc. v. Centennial Ins. Co.*, 389 N.E.2d 1080, 1082 (N.Y. 1979) (finding that broker was an agent of the insurance company where it "collected the premiums, issued the policy and was designated by the policy as 'agent or broker'"). However, merely "procuring a policy from an insurer is insufficient to cause a broker to become an agent of the insurer." *Phila. Indem. Ins. Co.*, 379 F. Supp. 2d at 458 n.7; *see also Vittoriosoa*, 1999 WL 167716, at *2 ("Selling a policy to the insured does not by itself make the broker an agent of the insurer."). Rather, "there must be evidence of some action on the insurer's part from which a general authority to represent the insurer may be inferred." *Phila. Indem. Ins. Co.*, 379 F. Supp. 2d at 457; *see also Vittoriosoa*, 1999 WL 167716, at *2 ("For a broker to become an insurer's agent, there must be evidence of some action on the insurer's part from which a general authority to represent the insurer may be inferred."); *Matco Prods., Inc. v. Boston Old Colony Ins. Co.*, 480 N.Y.S.2d 134, 137 (App. Div. 1984) ("There must be evidence of some action on the insurer's part, or facts from which a general authority to represent the insurer may be inferred, in order to convert an insurance broker into an agent of the insurer.").

Here, Great American's assistant vice president has stated that it "never had any agency agreement of any kind, written or otherwise, with Marshall & Sterling with respect to" the Policy (Damewood Aff ¶ 3), and that "Marshall & Sterling was solely the broker on behalf of the

insured," (*id.* ¶ 6).  Likewise, the chief claims officer at K&K Insurance swore that "K&K was the only Claims Administrator or agent with authority to receive and handle claim notifications" under the Policy (Aff. of P. Douglas Hamm ("Hamm Aff.") ¶ 7), and that premiums paid under the Policy "were not collected by Marshall & Sterling . . . but, instead, were collected by K&K on behalf of Great American," (*id.* ¶ 6).  REI disputes this, but with minimal evidence establishing any act on Great American's part that made M&S its agent.  For example, REI's president (McCarey) swore that "[d]uring the last 25 years, both [REI] and I notified Marshall & Sterling . . . when a potential insurance claim arose" (McCarey Affirmation ¶ 5), and that he "believed [Marshall & Sterling] were insurance agents," (*id.* ¶ 10).  Also, McCarey paid premiums for the Policy to Marshall & Sterling, by check made out to Marshall & Sterling. (Supp. Affirmation of David McCarey ¶¶ 3-5, ex. 1-4.)  And, when REI had a credit on its Great American Policy in 2009, Marshall & Sterling issued a refund in the form of a Marshall & Sterling check.  (*Id.* ¶ 6, Ex. 5.)  REI has submitted copies of checks and invoices that support its assertions.  (*Id.* Ex. 1-5.)  These facts, if believed, might be sufficient to justify the Court in treating notice to Marshall & Sterling as notice to Great American, if there was evidence that the insurer (here, Great American) did something that either made Marshall & Sterling its agent or made it appear to REI that Great American made Marshall & Sterling its agent.  *See Phila. Indem. Ins. Co.*, 379 F. Supp. 2d at 457; *Cohen*, 436 F. Supp. 2d at 527; *Mighty Midgets, Inc.*, 389 N.E.2d at 1082.

But, Plaintiff has offered no evidence that Great American designated Marshall & Sterling as its agent.  This case is far different, therefore, from those rare cases where the insurer designated the broker its agent.  For example, in *Mighty Midgets*, the New York Court of Appeals found that notice to an insurance broker counted as notice to the insurer because "the

10

broker's role went far beyond that of solicitor of the liability policy." *Mighty Midgets, Inc.*, 389 N.E.2d at 1082.  There, the broker "collected the premiums, issued the policy and was designated by the policy as 'agent or broker.'" *Id.*  Moreover, it was the "established practice" for the broker "to be entrusted with large batches of policies executed by [the insurer's] authorized signatories in blank, leaving it to [the broker] rather than [the insurer] to fill in such things as policy numbers, names of assureds it procured and the premiums to be charged." *Id.* And, the broker "required no further authorization from [the insurer] to decide . . . if and when a policy was to go into effect." *Id.*  Thus, Marshall & Sterling's mere acceptance of premium checks on Great American's behalf pales in comparison to the evidence of an agency relationship in *Mighty Midgets*.

Relatedly, REI avers that the Policy was ambiguous as to whom REI should notify, citing *Jeffrey v. Allcity Ins. Co.*, 809 N.Y.S.2d 174 (App. Div. 2006).  (Pl.'s Resp. 6.)  There, the Court found that the insured reasonably interpreted the policy to allow notice to his broker.  *See Jeffrey*, 809 N.Y.S.2d at 175 (agreeing with plaintiff's argument that "the notice provision was ambiguous because it used the pronouns 'we,' 'us,' and 'our' to describe who should be notified without clearly identifying Allcity as the party to whom those terms applied, and that, given the ambiguity, the contract should be interpreted to allow notice to his broker").  But, REI does not allege that it read the Policy to allow notice to its broker.  Nor could it, since the Policy clearly specified that "[n]otice to any *agent* of ours in New York State . . . shall be considered notice to us," and never suggested that notice to the insured's broker would be sufficient.  (Damewood Aff. Ex. A, New York Changes Commercial Gen. Liab. Coverage Form, C.2.e (emphasis added).)  Indeed, REI admits that it knew that Great American's agent was the person it needed to notify.  (McCarey Affirmation ¶ 10.)  Rather, REI faults Great American for not specifying

11

the identity of its agents in the Policy, thereby failing to correct REI's erroneous belief that Marshall & Sterling was Great American's agent.  Yet, again, an insured's mistaken belief that its broker is an agent of its insurer does not excuse late notice under New York law, s*ee Vittorioso*, 1999 WL 167716, at *2; *Shaw Temple A.M.E. Zion Church v. Mount Vernon Fire Ins. Co.*, 605 N.Y.S.2d 370 (App. Div. 1993), absent exceptional circumstances, *see Mighty Midgets*, 389 N.E.2d at 1082.

Even if REI could argue that it read the Policy to allow notice to its broker, *Jeffrey* would still not apply here because the Policy is not ambiguous in that regard.  While the Policy uses the terms "we" and "us," like the policy in *Jeffrey*, it also specifically defines those terms as "the company providing this insurance."  (Commercial Gen. Liab. Form, Preamble.)  And the first page of the Policy explicitly identifies the "GREAT AMERICAN ASSURANCE COMPANY" as the company providing the insurance.  (Pl.'s Resp. Ex. A, at *1.)  By contrast, it does not appear that the policy in *Jeffrey* defined the terms, "we," us," and "the Company providing this Insurance."  Accordingly, Great American did nothing to deflect its identity as the intended recipient of the required notice.  Moreover, the first page of the Policy also listed K&K's name and address at the top of the page under the heading, "Producer's Name and Address" (*id.*), further weakening REI's argument that Great American was responsible for REI's incorrect belief that Marshall & Sterling was Great American's agent.[7]

---

[7] The Court takes seriously its obligation to "carefully predict how the state's highest court would resolve" issues of state law, *Runner v. New York Stock Exchange, Inc.*, 568 F.3d 383, 386 (2d Cir. 2009), and recognizes that "[d]ecisions of New York's intermediate appellate courts are 'helpful indicators' of how the Court of Appeals would decide" such issues, *Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 133 (2d Cir. 2007).  Yet, the Court is not able to further parse *Jeffrey* as it is a 453-word summary order that cites no authority.  Moreover, the only appellate division case to cite *Jeffrey* did not clarify its meaning, instead distinguishing it in one sentence.  *See Bd. of Hudson River-Black River Regulating Dist. v. Praetorian Ins. Co.*,

Even assuming, arguendo, that Marshall & Sterling acted as Great American's agent for the purposes of accepting notice of claims, REI still did not provide effective notice until September 30, 2008, when it sent AASP's complaint to Marshall & Sterling. The Policy required that "[i]f a claim is made or 'suit' is brought against [REI], [REI] must . . . see to it that [Great American] receive[s] written notice of the claim or 'suit' as soon as practicable." (Commercial Gen. Liab. Form § IV, 2.b.) The Policy also mandated that REI "immediately send" Great American "copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit.'" (*Id.* § IV, 2.c.(1).) It is undisputed that REI did not provide anything in writing to Marshall & Sterling, let alone Great American, until September 30, 2008. Before then, REI had only given Marshall & Sterling oral notice, by "discuss[ing] whether coverage would exist," with Townsend, and by asking Townsend "to determine whether REI's insurance policies provided coverage for the AASP action." (Pl.'s Mem. Ex. A-4 ¶¶ 5, 7.)

REI attempts to avoid the Policy's explicit written notice requirements by pointing to an amendment to the Policy which was apparently added to allow claimants to provide notice to Great American's agents, instead of having to notify the company directly. (Pl.'s Resp 4-5.) The amendment is tacked on to end of the portion of the Policy dealing with notice, Commercial General Liability Form § IV, and is labeled as provision "2.e." It states: "Notice given by or on behalf of the insured, or written notice by or on behalf of the injured person or any other claimant, to any agent of ours in New York State, with particulars sufficient to identify the insured, shall be considered to be notice to us." (Damewood Aff. Ex. A, New York Changes

---

867 N.Y.S.2d 256, 258 (App. Div. 2008) ("[U]nlike the circumstances in [*Jeffrey*], the notification provisions of the instant policy are not ambiguous as to who must be notified in the event of an occurrence.").

Commercial General Liability Coverage Form, C.)  REI notes that the provision first refers to "notice," and then to "written notice," and argues that, by negative implication, the first reference should be construed to allow oral notice.  (Pl.'s Resp 5.)

Plaintiff's argument is analogous to the cannon of statutory construction, *expressio unius est exclusio alterius* ("inclusion of one thing indicates exclusion of the other").[8]  While this cannon is useful where it appears the drafters acted deliberately, it can be misleading where the drafters wrote carelessly.  *See Matter of Am. Reserve Corp.*, 840 F.2d 487, 492 (7th Cir. 1988) (Easterbrook, J.) (stating that the "weakness" of "the maxim *expressio unius*" is that it assumes that the drafter "tie[s] up every knot in every statutory subsection"); *Nat'l Petroleum Refiners Ass'n v. F.T.C.*, 482 F.2d 672, 676 (D.C. Cir. 1973) (maintaining that *expressio unius* "stands on the faulty premise that all possible alternative or supplemental provisions were necessarily considered and rejected by the legislative draftsmen"); William N. Eskridge, Jr., et al., Legislation 855 (4th ed. 2007) (noting that "[o]ne basic problem" with *expressio unius* is that it "assumes that the legislature thinks through statutory language carefully, considering every possible variation").  Here, it is difficult to believe that by adding provision 2.e – the main goal of which was obviously to allow notice to agents, as an alternative to notice to the insurer – the

_____

[8] It is not uncommon for courts interpreting contracts to rely on the same principles that guide statutory construction.  *See Tilley v. Mead Corp.*, 927 F.2d 756, 771 (4th Cir. 1998) ("[J]ust as a court, in construing a statute[,] is obliged to give effect, if possible, to every word Congress used, so must a court interpret the language of a contract . . . .") (internal quotation marks and citations omitted); *SR Int'l Bus. Ins. Co. Ltd. v. World Trade Ctr. Props., LLC*, 445 F. Supp. 2d 320, 352 (S.D.N.Y. 2006) (noting that two cannons of statutory construction, *noscitur a sociis* and *ejusdem generis*, are "at times applied together to statutes or contracts"); *Harris v. Allstate Ins.*, 127 N.E.2d 816, 818 (N.Y. 1955) (applying the canon of statutory construction *noscitur a sociis* to interpret an automobile insurance policy); *cf.* Restatement (Second) of Contract § 202 (noting that courts should generally give contractual language its "generally prevailing meaning," and interpret the writing "as a whole").

Parties also intended to surreptitiously repeal two explicit provisions requiring written notice. *Cf. Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154 (1976) ("It is, of course, a cardinal principle of statutory construction that repeals by implication are not favored."); *Morton v. Moncari*, 417 U.S. 535, 549 (1974) (applying "the 'cardinal rule . . . that repeals by implication are not favored.'") (quoting *Posadas v. Nat'l City Bank*, 296 U.S. 497, 503 (1936)).  Indeed, REI has not explained why, under this provision, Great American would no longer desire written notice of a claim or copies of demands, notices, summonses, or legal papers received from an "insured," while still requiring those documents from "injured person[s]" and "other claimant[s]."  (Damewood Aff. Ex. A, New York Changes Commercial General Liability Coverage Form, C.)

It is axiomatic that ambiguities in insurance policies must be construed against the insurer.  *See Hartol Prods. Corp. v. Prudential Ins. Co. of Am.*, 47 N.E.2d 687, 690 (N.Y. 1943) ("It is well-settled that if a policy of insurance is written in such language as to be doubtful or uncertain in its meaning, all ambiguity must be resolved in favor of the policy holder and against the company."); *see also U.S. Underwriters Ins. Co. v. Affordable Hous. Found.*, 256 F. Supp. 2d 176, 180 (S.D.N.Y. 2003) ("Under New York law, contracts of insurance are strictly construed in favor of the insured and against the insurer.").  But, when the policy's provisions are unambiguous and intelligible, courts should enforce them as drafted.  *See Parks Real Estate Purchasing Group v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006).  A policy is "ambiguous" where it is subject to more than one "reasonable interpretation."  *Continental Casualty Co. v. Rapid-American Corp.*, 609 N.E.2d 506, 512 (N.Y. 1993); *see also Webster's II: New Riverside University Dictionary* (1988) (defining "ambiguous" as "[l]iable to more than one interpretation").  Moreover, "[t]he cardinal principle for the construction and interpretation of

15

insurance contracts – as with all contracts – is that the intentions of the parties should control."
*Newmont Mines Ltd. v. Hanover Ins. Co.*, 784 F.2d 127, 135 (2d Cir. 1986).  Here, REI's
interpretation of provision 2.e is not reasonable as it is clear that the Parties did not intend to
implicitly repeal the two written notice clauses.  *See Field v. Mans*, 516 U.S. 59, 67-75 (1995)
(noting that "the rule of construction" presuming that Congress acts intentionally when it
"includes particular language in one section of a statute but omits it in another section" is
strongest where "the contrast" is "apparently deliberate," but "[t]he rule is weakest when it
suggests results strangely at odds with other textual pointers" (internal quotation marks
omitted)).  Accordingly, the Policy required REI to provided written notice of AASP's claim and
copies of AASP's complaint and any other demands, notices, summonses, or legal papers
received in connection with the AASP litigation.

      Where, as here, an insurance policy requires written notice of a claim, oral notice is of no
legal significance.  *See Bazar v. Great Am. Indem. Co.*, 119 N.E.2d 346, 350 (N.Y. 1954)
(dismissing an insurance claim "[b]ecause of the violation of the 'written notice' provision of the
policy"); *First City Acceptance Corp. v. Gulf Ins. Co.*, 665 N.Y.S.2d 114, 116 (App. Div. 1997)
("Verbal 'telephonic notice' to the selling agent of an insurance policy does not constitute the
requisite notification in writing."); *Hunt v. Galaxy Ins. Co.*, 636 N.Y.S.2d 194, 196 (App. Div.
1996) ("[T]elephonic contact with [the insurer's] agent does not satisfy [the policy's written
notice] requirement . . . ."); *Collins v. Isaksen*, 633 N.Y.S.2d 539, 540 (App. Div. 1995) ("Even
assuming that [the insured] orally notified [the insurer] of the accident [the day after it occurred],
such oral notification did not constitute proper notice under the policy."); *Travelers Ins. Co. v.
Littleton*, 630 N.Y.S.2d 353, 354 (App. Div. 1995) ("When the notice provision specifies that
notice shall be in writing, other forms of notice will not suffice."); *Shaw Temple A.M.E. Zion*

*Church*, 605 N.Y.S.2d at 371-72 ("[T]he policy requires written rather than oral notice.  The nine-month delay in providing the written notice required by the policy was unreasonable as a matter of law.  Accordingly, coverage under the policy was vitiated, and the appellant has no duty to defend or indemnify the plaintiff."); *Elkowitz v. Farm Family Mut. Ins. Co.*, 579 N.Y.S.2d 740, 742 (App. Div. 1992) (dismissing insurance claim for improper notice, despite the fact that insured gave oral notice two weeks after the accident, because "an insurer is not obligated to pay the loss of its insured in the absence of timely notice of the loss in accordance with the terms of the policy"); *Losi by Losi v. Hanover Ins. Co.*, 527 N.Y.S.2d 458, 458 (App. Div. 1988) ("The claim that oral notification at a high school function was timely notification under the circumstances is without merit.  It is clear that such informal, casual conversation does not constitute proper notice under the policy provisions."); *Jenkins v. Burgos*, 472 N.Y.S.2d 373, 378 (App. Div. 1984) ("[T]he notice given to Allstate on the telephone shortly after the accident was insufficient because it was not written . . . .").[9]

Therefore, REI did not provide effective notice to Great American until at least September 30, 2008, when it provided Marshall & Sterling a copy of AASP's complaint.  (Def.'s

---

[9] In *Prudential Property & Cas. Ins. v. Persaud*, 682 N.Y.S.2d 412 (App. Div. 1998), the Appellate Division held that "under the particular facts of this case, . . . the plaintiff waived the policy's written notice requirement and that the oral notification of the claim constituted sufficient notice."  *Id.* at 415.  In that case, the insurer's "own records acknowledge[d] receipt of the notice, which included all of the information that was required by the policy to be provided in a written notice," and the insurer "assigned a claim number to the matter and began an investigation."  *Id.* at 414.  Here, by contrast, REI merely "discussed" with its broker "whether coverage would exist" for the AASP litigation (Pl.'s Mem. Ex. A-4 ¶ 5), and asked him "to determine whether REI's insurance policies provided coverage for the AASP action," (*id.* ¶ 7).  There is no evidence that REI provided any of the critical information regarding the AASP suit, such as the complaint.  Nor is there any indication that Great American assigned a claim number to the matter and began an investigation.  Accordingly, *Persaud* does not apply here, and Great American did not waive the Policy's written notice requirements.

56.1 ¶ 15.)  This was more than three months after June 27, 2008, when AASP notified REI of its suit.  Based on these undisputed facts, the delay is unreasonable as a matter of New York law. *See Am. Ins. Co. v. Fairchild Indus., Inc.*, 56 F.3d 435, 440 (2d Cir. 1995) ("Under New York law, delays for one or two months are routinely held 'unreasonable.'"); *Prof'l Prod. Research Inc. v. Gen. Star Indem. Co.*, 623 F. Supp. 2d 438, 445 (S.D.N.Y. 2008) ("[E]ven periods of delay as short as two months have been found to be unreasonable as a matter of law."); *Myers v. Cigna Prop. & Cas. Ins. Co.*, 953 F. Supp. 551, 556-57 (S.D.N.Y.1997) (finding sixty-day delay was not "as soon as practicable"); *Heydt Contracting Corp. v. Am. Home Assurance Co.*, 536 N.Y.S.2d 770 (App. Div. 1989) (finding four month delay unreasonable as a matter of law); *Deso v. London & Lancashire Indem. Co. of Am.*, 143 N.E.2d 889 (N.Y. 1957) (finding fifty-one days unreasonably late as a matter of law).  Indeed, REI has not cited a single case in which a court has held a three-month delay in providing written notice was reasonable.

## 2.  Whether REI has a Valid Excuse for its Late Notice

REI will escape the consequences of its unreasonable delay if it offers a "valid excuse." *Blank*, 27 F.3d at 793.  REI asserts that its delay is excused for three reasons.  First, it claims it was "ignorant of its insurance coverage for the AASP litigation."  (Pl.'s Resp. 5.)  New York law excuses late notice where the insured demonstrates that its delay was caused by "justifiable ignorance of available insurance coverage."  *Seemann v. Sterling Ins. Co.*, 699 N.Y.S.2d 542, 543 (App. Div. 1999); *see also Sparacino v. Pawtucket Mut. Ins. Co.*, 50 F.3d 141, 143 (2d Cir.1995) ("[D]elay will be excused if the insured in good faith reasonably believes there is no policy coverage . . . .") (internal quotation marks omitted).  But, "[t]o prevail on this theory, an insured must prove that he or she was ignorant of the available coverage, and that he or she made 'reasonably diligent efforts to ascertain whether coverage existed.'"  *Mount Vernon Fire Ins. Co.*

18

*v. Abesol Realty Corp.*, 288 F. Supp. 2d 302, 314 (E.D.N.Y. 2003) (quoting *Winstead v.*

*Uniondale Union Free Sch. Dist.*, 608 N.Y.S.2d 487, 489 (App. Div. 1994)).  Moreover, where

coverage is unclear, reasonable insurance-holders give notice.  *See Prof'l Prod. Research*, 623 F.

Supp. 2d at 446 ("The fact that 'advertising injury' is an amorphous concept does not reasonably

excuse delaying notice for so much as a day.  Indeed, if 'advertising injury' is difficult to define,

it argues for giving notice at the first moment when a claim that *might* qualify is asserted.").

REI has submitted no evidence that it was ignorant of its insurance coverage, and it

certainly has not suggested any circumstances that could justify a rational jury in finding that its

ignorance was "reasonable."  REI's moving papers devote just one sentence to its ignorance of

coverage excuse, simply asserting that "REI was ignorant of its insurance coverage for the

AASP litigation."  (Pl.'s Resp. 5.)  For support, REI cites "Ex. A-6, McCarey Aff. at ¶ 11,"

which merely states that Mr. McCarey "did not interpret the March 27, 2008 letter from

Laurence Olive as requiring Rockland to notify Great American of the possibility of a claim," a

fact that does not directly speak to whether or not REI was aware of its insurance coverage, and

which in any case does not excuse the fifty-two days that REI delayed *before* asking its

insurance broker about the possibility of coverage.  *See Fairchild*, 56 F.3d at 440 ("Under New

York law, delays for one or two months are routinely held 'unreasonable.'").[10]

_____

[10] The only case REI cites on this point, *Seemann v. Sterling Ins. Co.*, 699 N.Y.S.2d 542
(App. Div. 1999), is readily distinguishable.  There, the appellate division held that the insured
met his burden of "demonstrat[ing] that he acted with due diligence in order to protect his own
interest when he received a document which would have prompted any person of ordinary
prudence to consult either an attorney or an insurance broker," because "upon receipt of the
letter from the injured party's attorney, plaintiff promptly notified" his insurer.  *Id.* at 543
(internal quotation marks, ellipsis, and citation omitted).  But here, when REI received a copy of
AASP's complaint – "a document which would have prompted any person of ordinary prudence
to consult either an attorney or an insurance broker" – it did not consult its broker for fifty-two
days and then, apparently, did nothing for another forty days while it waited for a response from

Second, REI argues that its late notice should be excused because "it was not, and still is not, at all clear who is Great American's New York agent for purposes of notice." (Pl.'s Resp. 6.) Yet, REI does not allege that it attempted to provide earlier notice, but was thwarted in its effort to ascertain the identity of a Great American agent who could accept such notice. Instead, REI's claim seems to be that Great American did not do enough to dispel REI's misperception that REI's broker, Marshall & Sterling, was also Great American's agent. But, as noted above, even assuming, arguendo, that notice to Marshall & Sterling could be effective, REI still failed to give effective notice under September 30, 2008, because it did not provide written notice to Marshall & Sterling until then.

Third, REI argues that its late notice is excused because it had a reasonable, "'good-faith belief in its non-liability'" for the claims asserted by AASP. (Pl.'s Resp. 5 (quoting *Crucible Materials Corp. v. Aetna Cas. & Sur. Co.*, 228 F. Supp. 2d 182, 197 (N.D.N.Y. 2001)).) But, although such a belief might excuse REI from providing timely notice of an "'occurrence' or an offense which *may result* in a claim," it does not excuse REI from providing timely notice "[i]f a *claim is made* or 'suit' is brought against" it. (Commercial Gen. Liab. Form § IV, 2.a, b (emphasis added).) This is because neither of the reasons for excusing an insured's late notice of an "occurrence" based on its belief in its non-liability, applies to late notice of a "claim."

First, as the Second Circuit has explained, "a notice of occurrence requirement is treated differently under New York law from a notice of claim requirement," because "the term 'occurrence' . . . leaves room for differences of opinion as to whether a particular event is likely to lead to liability." *Fairchild*, 56 F.3d at 439 (citing *New York v. Blank*, 27 F.3d 783, 795-96

---

its broker.

(2d Cir.1994)).  By contrast, "the term 'claim'" is not "fertile ground for disputes" because a "claim" is simply "an assertion by a third party that in the opinion of that party the insured may be liable to it." *Id.*  Whether an insured is liable for a claim has nothing to do with whether that claim has been asserted.  *See id.* ("A notice of claim provision . . . focuses on the actions of third parties and may be triggered by an unreasonable – even sanctionable – assertion of liability.").

Second, courts excuse late notice of an occurrence because, otherwise, insureds would effectively be "required to notify insurers of every incident that poses even a remote possibility of liability," leaving insurers "swamped with notice of minor incidents that pose little danger of liability." *Id.* (internal quotation marks omitted).  But, this "over-noticing" concern does not apply to notice of claims since "claims" are a far smaller class than "occurrences," and pose a far higher risk of liability for the insurer.  This is especially true for polices that cover an insured's legal fees – like those at issue here and in *Fairchild* – because the mere filing of a claim, if it is covered by the policy, triggers the insurer's duty to pay for the insured's defense.  *Id.* at 439 (noting that one harm of "vexatious litigants" is the need for the sued to notify their insurance carriers).  Thus, the chances that an insurance company will incur at least some liability for a "claim" covered by the policy is not a "remote possibility," *id.*, but a realistic possibility.  It is therefore unsurprising that insurers have been abundantly clear that they desire notice of all "claims," not just meritorious claims.  (Commercial Gen. Liab. Form § IV, 2.b.)  Accordingly, the Second Circuit has held that "[a]n assertion of possible liability, no matter how baseless, is . . . all that is needed to trigger a notice of claim provision." *Id.*

Plaintiff asks this Court to ignore *Fairchild* in light of *Reynolds Metal Co. v. Aetna Casualty & Surety Co.*, 696 N.Y.S.2d 563 (App Div. 1999).  (Pl.'s Resp. 5-6.)  There, the Appellate Division expressly disagreed with *Fairchild*, finding "no reason why a failure to give a

timely notice of claim should not be excused by an insured's good-faith belief in nonliability."
*Reynolds Metal Co.*, 696 N.Y.S.2d at 568.  The court rejected *Fairchild's* distinction between
notice of occurrence and notice of claim provisions because "[i]t appears illogical that insureds
should be required to promptly notify insurers of every claim no matter how remote the
possibility of liability or coverage but be excused from doing so if a reasonable evaluation of an
occurrence yields the same conclusion." *Id.*  In so holding, *Reynolds* relied heavily on the New
York Court of Appeals' decision in *Empire City Subway Co. v. Greater New York Mutual
Insurance Co.*, 315 N.E.2d 755 (1974).  There, the insured argued that its lengthy delay in
providing notice of an occurrence and a claim was excused by its good faith belief in its non-
liability.  *Id.* at 756-57.  Because the Court of Appeals found the insured's belief in its non-
liability unreasonable, it rejected that excuse for providing late notice of the occurrence and the
claim.  *Id.* at 757-58.  Still, the *Reynolds* court found it "significant that the [*Empire City*] court
considered the merits of the plaintiff's excuse instead of simply holding that any excuse for a
failure to serve a notice of claim was irrelevant."  *Reynolds Metal Co.*, 696 N.Y.S.2d at 568.

Some courts within the Second Circuit apparently believe that *Reynolds* is sufficient
justification to ignore the Second Circuit's ruling in *Fairchild*.  *See Ill. Nat. Ins. Co. v. Banc One
Acceptance Corp.*, No. 05-CV-1260, 2008 WL 5423262, at *12 (N.D.N.Y. Dec. 29, 2008)
(finding that "the doctrine of excuse, when reasonable, may also excuse a delay in notifying an
insurer of a potential claim," because "the Third Department rejected the Second Circuit's
interpretation of New York law and the Circuit's distinction between late notice of a claim and
late notice of an occurrence" (citing *Reynolds Metal Co.*, 696 N.Y.S.2d 563)); *Crucible
Materials Corp.*, 228 F. Supp. 2d at 197 ("In light of the *Reynolds Metal* decision and the Court
of Appeal's willingness [in *Empire City*] to consider the excuse of non-liability in late notice of

22

claim cases, this court finds that the doctrine of excuse applies in the instant case."); *Mark A. Varrichio & Assocs. v. Chi. Ins. Co.*, No. 01-CV-2737, 2001 WL 1524475, at *4 (S.D.N.Y. Nov. 29, 2001) (noting, in dicta, that "lower [New York State] courts have expressed implicit and explicit disagreement with the approach taken" by the Second Circuit in *Fairchild* (citing *Reynolds*, 696 N.Y.S.2d 563, and *Strand v. Pioneer Ins. Co.*, 704 N.Y.S.2d 683 (App. Div. 2000))); *cf. In re Ancillary Receivership of Reliance Ins. Co.*, 863 N.Y.S.2d 415, 420-21 (App. Div. 2008) (quoting *Reynolds* approvingly).

Still, others courts in the Second Circuit have followed *Fairchild* over *Reynolds*.  *See Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of N.Y.*, 07-CV-6915, 2008 WL 2567784, at *6 (S.D.N.Y. June 25, 2008) ("[A] good faith belief that a claim or suit against an insured that alleges damages within the scope of an insurance policy will not ultimately succeed does not relieve that insured of its obligation to provide notice of that claim or suit."); *Mount Vernon Fire Ins. Co.*, 288 F. Supp. 2d at 314 ("Once an insured has been served with a summons and complaint . . . the insured can no longer claim a good faith belief in nonliability for the underlying occurrence."); *Paul K. Rooney, P.C. v. Chi. Ins. Co.*, No. 00-CV-2335, 2001 WL 262703, at *10 (S.D.N.Y. Mar. 16, 2001) ("[T]here is no valid excuse under New York law for failing to give reasonable notice when there is an actual claim that triggers a notice of claim provision requiring immediate notice."); *cf. Underwriters at Lloyd's of London v. 150 Nassau St. Billiards, Inc.*, 2003 WL 22999464, at *10 n.4 ("Courts in the Second Circuit have . . . distinguished the two notice provisions and have questioned whether the failure to give notice of a claim can be excused by a belief in nonliability."

This Court sides with these latter decisions and elects to follow *Fairchild* rather than *Reynolds*.  First, *Empire City*, upon which *Reynolds* relies heavily, was decided well before

*Fairchild*.  So, the Second Circuit in *Fairchild* apparently did not read *Empire City* as implicitly holding that a good faith belief in non-liability can excuse late notice of a claim.  Indeed, *Empire City* could be read as holding only that the insured's belief in its nonliability was unreasonable, rather than resolving thorny issues involving the differences between notice of occurrence and notice of claim provisions.  *See Empire City*, 315 N.E.2d at 758 (refusing to excuse an insured's late notice "[s]ince [the insured] has failed to offer any credible explanation for the 16-month delay in notifying [its insurer] of [the] claim").  Second, *Reynolds's* attack on *Fairchild's* distinction between notice of occurrences and claims is unpersuasive, as other judges in this District have noted.  *See Travelers Cas. & Sur. Co.*, 2008 WL 2567784, at *6 n.10 ("[The *Reynolds*] decision's conclusion that there is 'no reason' to draw a distinction between claims and occurrences regarding notice requirements, is belied by [*Fairchild* and *Blank*]." (quoting *Reynolds Metal Co.*, 696 N.Y.S.2d at 568)); *Paul K. Rooney, P.C.*, 2001 WL 262703, at *10 (noting that the rationale for excusing late notice of occurrences when the insured believes it is not liable is to avoid requiring notice where there is "little danger" of a claim being filed "by the insured against the insurer," and recognizing that "[o]nce there is a reasonable possibility that the policy will be involved, . . . this rationale is no longer applicable").  Accordingly, this Court follows the Second Circuit's decision in *Fairchild* and finds that REI's alleged good-faith belief that it was not liable for the claims asserted by AASP does not excuse REI's failure to provide timely notice of those claims to Great American.[11]

---

[11] It is also worth noting that, even if the Court followed *Reynolds*, REI's non-liabilty excuse would fail because it has not offered any facts explaining why it believed it was not liable to AASP.  In particular, neither of David McCarey's statements explain why he did not think REI was liable.  Accordingly, REI has not raised a factual dispute over whether its belief in non-liability was reasonable.

### 3. Whether Great American Waived its Late Notice Defense

REI contends that Great American waived its late notice defense.  In its initial letter denying REI's claim, Great American stated that it denied the claim based both on REI's late notice, and on its belief that AASP's suit against REI was not covered by the policy.  (Pl.'s Mem. Ex. A-7.)  REI argues that by denying that REI's litigation costs were covered by the Policy, Great American waived any late notice defense it might have had.  (Pl.'s Mem. 19.)  For support, REI cites the Second Circuit's statement that "[i]t is established that a repudiation of liability by an insurer on the ground that the loss is not covered by the policy operates as a waiver of the notice requirements contained in the policy."  *H.S. Equities, Inc. v. Hartford Acc. & Indem. Co.*, 661 F.2d 264, 270 (2d Cir. 1981).

There is language in several other cases, however, suggesting that, under New York law, an insurer only waives a late notice defense where it denies a claim *solely* on the ground that it is not covered by the policy, without mentioning the late notice defense.  *See, e.g.*, *Rock Transp. Props. Corp. v. Hartford Fire Ins. Co.*, 433 F.2d 152, 153 (2d Cir. 1970) (finding that, because the defendant "specifically disclaimed liability under the policies on *the sole ground*" that damage resulted from normal wear and tear, the defendant "waived the notice requirement" (emphasis added)); *In re Balfour Maclaine Int'l Ltd.*, 873 F. Supp. 862, 871 (S.D.N.Y. 1995) ("[E]ven if [the defendant's] late-notice defense has merit, we find that [it] waived this defense by failing to include it in its original declaratory judgment complaint . . . ."); *Haslauer v. N. Country Adironack Co-op. Ins. Co.*, 654 N.Y.S.2d 447, 448 (App. Div. 1997) (finding that because defendant's "disclaimer was based *solely* on an alleged lack of coverage," it "waived the defenses of late notice or illegality" (emphasis added)); *Ehrlich ex rel. Williams v. Aetna Cas. & Sur. Co.*, 463 N.Y.S.2d 934, 938 (App. Div. 1983) (finding that insurer refused to pay insured

25

"*solely* upon the ground of lack of coverage and thereby waiv[ed] its affirmative defense of late notice" (emphasis added)); *Gen. Accident Ins. Group v. Cirucci*, 403 N.Y.S.2d 773, 773 (App. Div. 1978) ("[Insurer,] in its original letter of disclaimer, failed to assert the alleged unreasonable delay . . . in giving notice of the occurrence.  [Insurer] cannot now assert that delay as the basis for its disclaimer."), *aff'd*, 387 N.E.2ed 223 (N.Y. 1979); *Appell v. Liberty Mut. Ins. Co.*, 255 N.Y.S.2d 545, 547 (App. Div. 1964) ("[D]elay was waived by [insurer's] original disclaimer which was based primarily upon the ground of the [plaintiffs'] non-cooperation in violation of the terms of the policy, without mention of plaintiffs' delay in giving it notice of the accident."); *cf. Ethicon, Inc. v. Aetna Cas. & Sur. Co.*, 805 F. Supp. 203, 205 (S.D.N.Y. 1992) (finding that, under New Jersey law, the defendant did not "waive its late notice defense by including a denial of coverage among other reasons for denying coverage in its" letter). Moreover, REI has not pointed to a single case in which a court applying New York law has found that an insurer waived its late notice defense even though it raised that defense in its first, prompt denial letter.

Finding waiver only where an insurer fails to include a late notice defense in its claim denial – as opposed to also finding waiver where an insurer denies a claim both for lack of notice and lack of coverage – is consistent with the general rule that an insurer waives whatever defenses it does not include in its claim denial.  *See Luria Bros. & Co., Inc. v. Alliance Assur. Co.*, 780 F.2d 1082, 1090 (2d Cir. 1986) ("It is settled that '[w]hen one specific ground of forfeiture is urged against the claim, and a refusal to pay is based upon a specific ground, all other grounds are waived.'" (quoting 16C Appleman & Appleman, *Insurance Law and Practice* § 9260, at 393 (1981))); *Middle E. Eng'g & Dev. Co. v. Arkwright-Boston Mfrs. Mut. Ins. Co.*, No. 86-CV-834, 1987 WL 17419, at *2 (S.D.N.Y. Sept. 16, 1987) ("Under the waiver doctrine,

when an insurer refuses to pay a claim based on one ground that it specifically states, the insurer waives all other grounds for denying liability."); *Gen. Accident Ins. Group v. Cirucci*, 387 N.E.2d 223, 224 (N.Y. 1979) ("[T]he notice of disclaimer must promptly apprise the claimant with a high degree of specificity of the ground or grounds on which the disclaimer is predicated."); *Elmuccio v. Allstate Ins. Co.*, 540 N.Y.S.2d 465, 467 (App. Div. 1989) (finding that "even if Allstate could have validly disclaimed based upon a late notice," its failure "to raise this ground in its disclaimer letter . . . precludes its consideration").

A contrary ruling would compel an insurer who receives late notice either to waive its late notice defense, or its defense on the merits.  This might be a reasonable result if the *H.S. Equities* line of cases were based on the broader principle that insurers must show prejudice in order to deny coverage based on late notice.  Indeed, as one Maryland case explained, if an insurer "would have declined the defense in any event based on its mistaken conclusion that there was no potential coverage[,] the insurer should not later be allowed to use the delay as a bar to reimbursing the insured for the reasonable expenses incurred in defending the covered claim."  *Sherwood Brands, Inc. v. Hartford Acc. & Indem. Co.*, 698 A.2d 1078, 1086-87 (Md. 1977).  But, because the prejudice rule followed in Maryland does not apply here, there is no logic compelling the rule urged by REI.

Indeed, lack of prejudice cannot be the rationale for the *H.S. Equities* rule since, until recently, New York has not required insurers to establish prejudice in order to state a late notice defense.  *See supra* note 6.  Instead, as *H.S. Equities* itself says explicitly, the rule it states is based on a concept of "waiver."  661 F.2d at 270.  The law generally finds that a party "waives" a defense only where the party intentionally renounces it, or is deemed to renounce it based on its failure to raise it at the same time it specifically raises other defenses.  *See New York v.*

27

*AMRO Realty Corp.*, 936 F.2d 1420, 1431 (2d Cir. 1991) ("In the insurance context, New York

law defines waiver as 'a voluntary and intentional relinquishment of a known right.' . . . An

'implied waiver exists when there is an intention to waive unexpressed, but clearly to be inferred

from circumstances.'") (citations and ellipses omitted).  New York cases discuss the rule stated

in *H.S. Equities* in similar terms, smacking of waiver.  *See id.* at 1432 ("[The insurers'] assertion

of several grounds for disclaimer without mentioning late notice, provides ample 'evidence that

the insurer intended to abandon that defense,' . . . .  Indeed, . . . under New York law, the act by

an insurer of disclaiming on certain grounds but not others is deemed conclusive evidence of the

insurer's intent to waive the unasserted grounds." (quoting *Commercial Union Ins. Co. v. Int'l

Flavors & Fragrances, Inc.*, 822 F.2d 267, 274 (2d Cir. 1987)).  An insurance company cannot

be said to have intended to waive a late notice defense that it explicitly raised in its claim denial,

simply because it also denied the claim on the merits.  Accordingly, the Court finds that Great

American did not waive its late notice defense.[12]

_____

[12] This holding can be squared with *H.S. Equities*'s ostensibly categorical statement that "a repudiation of liability by an insurer on the ground that the loss is not covered by the policy operates as a waiver of the notice requirements," 661 F.2d at 270, if *H.S. Equities* is viewed as a futility, rather than a waiver, case.  In *H.S. Equities*, the insurer had a "general position" that its policy did not cover third-party consumer suits.  *Id.* at 271.  This blanket "repudiation of liability on the ground that the loss is not covered by the policy" rendered notice of the loss futile, since the insurer already declared its intention not to cover it.  Indeed, it appears that the Second Circuit views *H.S. Equities* as a futility case.  *See Olin Corp. v. Ins. Co. of N. Am.*, 221 F.3d 307, 329 (2d Cir. 2000) ("Under the rule of *H.S. Equities*, where an insured becomes aware of a general practice of its insurer to deny coverage for a particular type of claim on a particular basis, the insured is relieved of the obligation to continue to give *futile* notification as to such claims." (emphasis added)).  *H.S. Equities* is also rendered consistent with New York cases implying that a late notice defense is waived only where "disclaimer [is] based solely on an alleged lack of coverage," *Haslauer* , 654 N.Y.S.2d at 448, when it is remembered that those cases dealt with waiver of "the *defense*[] of late notice," *id.* (emphasis added), whereas *H.S. Equities* involved "waiver of the notice *requirements*," *H.S. Equities*, 661 F.2d at 270 (emphasis added).  That is, where, as in *H.S. Equities*, an insured is aware that an insurer has a general policy of denying certain claims, it makes sense to hold that the insured is not *required* to give

### III. Conclusion

For the reasons stated herein, the Court denies REI's motion for partial summary judgment and grants Great American's cross-motion for summary judgment because of REI's unreasonable and unexcused delay in notifying Great American of the AASP's suit. The Clerk of the Court is respectfully directed to terminate the pending motion (Dkt. No. 38), enter judgment for Defendant, and close this case.


SO ORDERED.

Dated:  September 29, 2010
        White Plains, New York

        KENNETH M. KARAS
        UNITED STATES DISTRICT JUDGE

---

notice. By contrast, where the insured fails to give the notice that he or she was admittedly required to give, the question is whether the insurer waived its *defense* based on that violation of the notice requirement. Consistent with *H.S. Equities* and *Olin*, this is particularly true here, where REI does not allege that Great American had a general position of denying coverage in cases like that brought against REI. *See Olin*, 221 F.3d at 329 (noting that under *H.S. Equities*, insured is relieved of notice obligations where insured's knowledge of insurer's general practice makes notice futile). The Court holds that a late notice *defense* is waived only where the insurer fails to raise it in its claims denial.

Service List (by ECF)

Jerold Oshinsky, Esq.
Jenner & Block, LLP
633 West 5th Street, Suite 3500
Los Angeles, CA 90071
(213)-239-5156
Fax: 213.239 5166
Email: joshinsky@jenner.com
*Counsel for Plaintiff*

Philip Furgang, Esq.
Furgang & Adwar, LLP.
2 Crosfield Avenue
Suite 210
West Nyack, NY 10994
(845) 353-1818
Fax: (845) 353-1996
Email: philip@furgang.com
*Counsel for Plaintiff*

Jeff Imeri, Esq.
Marshall, Dennehey, Coleman & Goggin, P.C.
140 Broadway
19th Fl.
New York, NY 10005
(212) 878-1700
Fax: (212) 878-1701
Email: jjimeri@mdwcg.com
*Counsel for Defendant*